PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Putative Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MICHAEL VILLAGOMEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WHAT IF HOLDINGS LLC, a New Jersey limited liability company, d/b/a C4R MEDIA CORP.,

Defendant.

Case No. '26CV6250 H DEB

**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17529.5 (UNLAWFUL COMMERCIAL EMAIL ADVERTISEMENTS)**

# I. INTRODUCTION & NATURE OF ACTION

1. Defendant's entire business model is evil: it spams consumers with false notices of pending benefits and then harvests their personal information when they try to claim their supposed benefit.

2. Plaintiff Michael Villagomez received messages announcing a pending refund, an old payment supposedly in his file, a settlement payment supposedly awaiting acceptance, an approved credit line, and an order ready to ship. Plaintiff had requested none of them. The messages used his name and the language of existing transactions to make a commercial solicitation appear to be an account, payment, or fulfillment notice.

3. The object was to deliver consumers into Defendant's commercial lead-generation operation. Defendant operates through the C4R Media Corp. name to acquire consumer attention, personal information, and purported marketing consent for monetization. A supposed refund, shipment, or payment supplies the pretext; the resulting visit or lead supplies the commercial value.

4. The six exemplars reproduced below were sent to Plaintiff's personal address in just a two day period on October 31 and November 1, 2026. They use personalized refund, payment, settlement, credit-approval, and shipment representations to induce recipients to engage with the advertised commercial operation.

5. No refund described in the messages was pending for Plaintiff. No old payment was being held in his file. No settlement administrator had reserved the advertised settlement payment for him. He had placed no order for the advertised samples and had not received the represented credit approval. Those are factual representations about supposed existing transactions, not puffery about the merits of a product.

6. Plaintiff brings this action under California Business and Professions Code section 17529.5(a)(3), individually and for similarly situated recipients of the documented subject-line campaigns. He seeks the liquidated damages, attorneys' fees, costs, and other relief authorized by law, subject to the statute's applicable limitations. The requested relief

addresses the unlawful advertisements themselves; the consent-farm allegations explain their design, purpose, and materiality.

7. Plaintiff never enrolled in Defendant's lead-generation program, never requested these solicitations, never agreed to arbitrate a dispute with Defendant, and never agreed to surrender his right to proceed on a class basis. He specifically denies that Defendant may transform receipt of an advertisement, an examination of its contents, or a technical record associated with his identifying information into assent to an agreement he did not make.

8. The commercial harm extends beyond the first deceptive message. The challenged business model seeks to turn a consumer's response into reusable evidence of supposed permission to market. The mechanism is particularly objectionable because it presents an invented benefit as the reason to engage while treating the consumer's information and purported consent as the asset to be acquired. Federal enforcement actions involving other lead generators document the same general risk.[1]

[1] *See* Complaint for Civil Penalties, Permanent Injunction, Monetary Relief, and Other Relief, *United States v. Fluent, LLC*, No. 9:23-cv-81045 (S.D. Fla. July 17, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/1923230fluentcomplaintandattachment.pdf; Fed. Trade Comm'n, *FTC, Law Enforcers Nationwide Announce Enforcement Sweep to Stem the Tide of Illegal Telemarketing Calls to U.S. Consumers* (July 18, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-law-enforcers-nationwide-announce-enforcement-sweep-stem-tide-illegal-telemarketing-calls-us (describing allegations that deceptive employment and reward solicitations fed websites that converted consumer information into marketing leads).

## II. THE SPAM BAIT-AND-SWITCH EVIDENCE (SIX EXEMPLAR EMAILS)

9. The six reproduced messages identify the dates, recipients, sending identities, and language on which Plaintiff relies. Their individualized principal links route through knollcompany.com, aeonwise.com, masterstakes.com, or getaworkgroup.com. The supplied campaign investigation identifies C4R Media Corp. copyright disclosures on the refund, settlement, and credit-line landing pages described below.

*Email Evidence 1 — Pending Refund*

**From:** Employment Opportunities <jobupdates@send.knollcompany.com>
**Date:** November 1, 2026 at 5:55:33 AM PST
**To:** villagomezmichael32@icloud.com
**Subject: (OLD) Refund PENDING for Michael**
**Reply-To:** jobupdates@knollcompany.com

(OLD) Refund PENDING for Michael
Nov 1st | We're glad to have finally reached you, Michael. A refund may still be pending for you. Click below to find out how much you have coming your way and request it while you still can.

**Request Your Refund**

| Privacy Policy | Unsubscribe |
Old Marlton Pike W #657. Marlton - NJ 08053
All rights reserved. © 2025 knollcompany.com

## Email Evidence 2 — Approved Credit Line

**From:** Employment Opportunities <jobupdates@send.knollcompany.com>
**Date:** October 31, 2026 at 2:26:39 AM PDT
**To:** villagomezmichael32@icloud.com
**Subject: APPROVED CREDIT LINE | Five Thousand Dollar**
**Reply-To:** jobupdates@knollcompany.com

**APPROVED CREDIT LINE | $5,000.00**

Exciting , Michael! You've just been approved for an up to **$5,000.00 CREDIT LINE** at the following webpage. Continue there now to view your options to verify this extra spending money.

VERIFY APPROVED CREDIT LINE | $5,000.00

*Only for qualified readers. Visit the attached website for further details.

| Privacy Policy | Unsubscribe |
Old Marlton Pike W #657. Marlton - NJ 08053
All rights reserved. © 2025 knollcompany.com

Email Evidence 3 — Old 2025 Payment

**From:** Aeon Wise <wise@aeonwise.com>
**Date:** October 31, 2026 at 12:02:39 AM PDT
**To:** villagomezmichael32@icloud.com
**Subject:** 📂 **IN Michael's FILE: OLD 2025 PAYMENT**
**Reply-To:** wise@aeonwise.com

**October 31st**
We've been trying to reach out to you, Michael! You might have a **TREMENDOUS PAYMENT** from 2025 **OWED to YOU**. Head to the following window to see how much is in your file and request it NOW!

**👉 Collect Your PAYMENT ASAP!**

We've been trying to reach out to you, Michael, and we didn't want this one to slip by unnoticed. There **may be a TREMENDOUS CHECK from 2025** sitting in your file right now. **Take a look inside your file today.**
The only thing standing between you and **that potential 2025 payment** is one quick check. Every file reads differently, so the amount that **could be owed to you** is yours alone to find out. **Find out how much might be waiting.**
Michael, looking takes barely **a moment**, and either way you'll finally know. If something is there, the following webpage shows you how to **request it ASAP**. **Request your check NOW.**

**AEONWISE**
You can choose which communications you want to continue receiving from aeonwise.com.
**Review email settings**
11180 Hwy 51 S Ste 7 PMB 2005. Atoka. TN 38004
Copyright 2026 aeonwise.com

Email Evidence 4 — Settlement Payment

**From:** Jesse from MS <notifications@rmt.masterstakes.com>
**Date:** November 1, 2026 at 12:35:42 AM PDT
**To:** villagomezmichael32@icloud.com
**Subject: Michael Villagomez's Settlement Payment Arrived?**
**Reply-To:** notifications@masterstakes.com

**Michael's Settlement PAYMENT Arrived?**
Michael Villagomez, you may be unaware of your involvement in a class action lawsuit. The good news is that **your settlement payment may have just arrived** at the attached site. Go there now to accept what's reserved in your name.

ACCEPT SETTLEMENT PAYMENT

This message was sent to registered members of Master Stakes to provide account-related updates and information.
You can manage your communication preferences at any time by visiting this page
© 2026 Master Stakes
600 S Water St #1020. Burnet. TX 78611

## Email Evidence 5 — Personal Credit Approval

**From:** Employment Opportunities <jobupdates@send.knollcompany.com>
**Date:** October 31, 2026 at 2:33:46 AM PDT
**To:** villagomezmichael32@icloud.com
**Subject: Michael, YOU'VE BEEN APPROVED***
**Reply-To:** jobupdates@knollcompany.com

**YOU'VE BEEN APPROVED!!***

Well done, Michael! You've been approved* for up to **Five Thousand Dollar** credit line options. Click your prompt NOW to verify this new spending balance.
*Only for qualified readers. Visit the attached website for further details.

CONFIRM ☞ Five Thousand Dollar

| Privacy Policy | Unsubscribe |
Old Marlton Pike W #657. Marlton - NJ 08053
All rights reserved. © 2025 knollcompany.com

Email Evidence 6 — Order Ready to Ship

**From:** Group Work <getaw@news.getaworkgroup.com>
**Date:** November 1, 2026 at 11:35:16 AM PST
**To:** villagomezmichael32@icloud.com
**Subject: Your Order is Ready to Ship!**
**Reply-To:** getaw@getaworkgroup.com

**Your Order is Ready to Ship!**

MICHAEL, we've just been updated that your **COMPLIMENTARY order** of **Name Brand Samples** is ready to ship! Use the button below to secure it.

**Secure Your Order**

Privacy Policy | Unsubscribe
© 2024 getaworkgroup.com. All rights reserved
6435 W Jefferson Blvd PMB #323, Fort Wayne IN 46804

10. On November 1, 2026, at 5:55:33 a.m. PST, the "Employment Opportunities" sender used jobupdates@send.knollcompany.com to tell Plaintiff "(OLD) Refund PENDING for Michael." The body instructed him to request the refund while he still could. The deception was the asserted existence of a refund associated with him, not whether the recipient had completed a genuine refund request correctly.

11. On October 31, 2026, at 12:02:39 a.m. PDT, "Aeon Wise," using wise@aeonwise.com, sent the subject "IN Michael's FILE: OLD 2025 PAYMENT," preceded by a folder symbol. The body referred to a tremendous payment from 2025 and directed him to collect it. Defendant did not have an actual old payment in a file for Plaintiff.

12. On November 1, 2026, at 12:35:42 a.m. PDT, "Jesse from MS," using notifications@rmt.masterstakes.com, sent "Michael Villagomez's Settlement Payment Arrived?" The body said he might be unaware of his involvement in a class action, represented that a payment might have arrived, and directed him to accept what was reserved in his name. Plaintiff was not awaiting the represented settlement distribution. The question mark invited him to investigate a supposed existing payment; it did not disclose a lead-generation advertisement unrelated to any actual reserved settlement.

13. That settlement message also purported to be an account-related update for registered Master Stakes members. Plaintiff never registered for that program or authorized Defendant to characterize him as an enrolled member. Such boilerplate cannot establish enrollment by repeating the very fact Plaintiff disputes.

14. On October 31, 2026, at 2:33:46 a.m. PDT, "Employment Opportunities" sent "Michael, YOU'VE BEEN APPROVED*" from jobupdates@send.knollcompany.com. The body referred to approval for credit-line options up to $5,000 and instructed him to verify a new spending balance. Plaintiff had not applied for or obtained the represented approval through Defendant. An invitation to find out whether he might qualify for something else is materially different from notice that he has already been approved.

15. On November 1, 2026, at 11:35:16 a.m. PST, “Group Work,” using getaw@news.getaworkgroup.com, sent “Your Order is Ready to Ship!” The body referred to a complimentary order of name-brand samples and directed Plaintiff to secure it. He had placed no such order. An order cannot truthfully be ready to ship when the transaction represented to the recipient never existed.

16. On October 31, 2026, at 2:26:39 a.m. PDT, “Employment Opportunities,” using jobupdates@send.knollcompany.com, sent “APPROVED CREDIT LINE | Five Thousand Dollar.” Its body stated that Plaintiff had just been approved for a credit line up to $5,000 and directed him to verify that supposed approval. Plaintiff had not received the represented approval. The actual solicitation was an invitation to enter a commercial credit-offer funnel, not a truthful account notice concerning existing approved credit.

17. The messages’ exact wording, visible sending identities, dates, and principal links permit Defendant to identify the challenged campaigns. Their repeated personalization and transaction-specific calls to action support the inference of coordinated campaign templates. On information and belief, their destination disclosures, campaign attribution, and commercial routing connect the solicitations to Defendant’s lead-generation operation. The precise publisher agreements, campaign identifiers, approval records, and compensation arrangements are within Defendant’s and its vendors’ possession.

18. The refund message routes to https://claim.foundmoneyguide.com/, whose landing-page footer is reported in the supplied investigation as “Copyright © 2026 C4R Media Corp.” The settlement message routes to https://claim.theclassactionguide.com/, whose landing page is reported as “Copyright © 2025 C4R Media Corp.” Both credit-line messages route to https://go.topcreditcardfinder.com/, likewise reported as “Copyright © 2025 C4R Media Corp.” These specific destination disclosures support the allegation that Defendant’s C4R operation is the commercial beneficiary of the campaigns, despite the different visible sender names.

## III. PARTIES

19. Plaintiff Michael Villagomez is a citizen and resident of California residing within this District in the city of Vista, County of San Diego. He owns and uses villagomezmichael32@icloud.com, the address appearing in the reproduced messages. He received, opened, and reviewed the challenged advertisements on his personal device while physically present in California. His address is a California electronic-mail address within Business and Professions Code section 17529.1 because its user is a California resident.

20. Defendant What If Holdings, LLC is a New Jersey limited liability company with its principal place of business at 234 Industrial Way West, Suite A202, Eatontown, New Jersey 07724. Plaintiff alleges on information and belief that Defendant conducts the challenged lead-generation business under the C4R Media Corp. name and conducts business with California consumers through its campaigns, publishers, and lead-generation websites.

21. On information and belief, Defendant uses publishers and other marketing participants to acquire traffic for its lead-generation destinations. As to the challenged solicitations, those participants acted with authority to promote Defendant's offers and funnels, and within that authority caused delivery of the advertisements. Plaintiff alleges Defendant's own advertising, approval, procurement, and commercial exploitation of these campaigns; an affiliate label is not a substitute for that participation.

22. The allegations made on information and belief concern matters principally controlled by Defendant, including campaign authorization, recipient sourcing, publisher compensation, consent records, and destination ownership. Their stated bases include the reproduced campaign language, individualized links, repeated transmission patterns, and C4R destination disclosures alleged above. Discovery is expected to identify the participants and their respective roles with greater precision.

## IV. JURISDICTION AND VENUE

Class Action Fairness Act Jurisdiction

23. This Court has original subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). The proposed Class exceeds 100 members, minimal diversity exists, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff is a California citizen. For purposes of CAFA, Defendant is a citizen of New Jersey, where it is organized and has its principal place of business. 28 U.S.C. § 1332(d)(10).

24. On information and belief, the proposed Class includes more than 100,000 recipients. That estimate rests on the alleged mass distribution of the campaigns, the standardized message templates, and the repeated use of separate payment, credit, and shipment solicitations to a single recipient over two days. The aggregate amount placed in controversy by the challenged campaigns exceeds $5 million when legally recoverable liquidated damages across distinct incidents and statutory attorneys' fees are considered.

25. The amount-in-controversy allegation concerns multiple campaign variants and distributions, not a single mass transmission assumed to yield unlimited damages. The exact campaign totals and number of statutory incidents are within Defendant's records. Plaintiff alleges the jurisdictional threshold in good faith based on the pleaded scale and repeated campaign activity, while recognizing that the ultimate recovery must comply with the statute.

26. Plaintiff has Article III standing because he personally received and reviewed repeated unsolicited, materially deceptive commercial messages in his private inbox. The challenged solicitations occupied his attention, required him to examine purported financial and shipment notices, and interfered with his use and control of his personal communications. His injury consists of the lies he was told and the actual unwanted contact and attendant intrusion, not merely a risk that another person might later receive a solicitation. It is traceable to the campaigns alleged here and redressable by monetary relief.

## V. PERSONAL JURISDICTION

27. This Court has specific personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure section 410.10.

Defendant purposefully directs the challenged commercial solicitations into California, exploits California recipients as a market for its lead-generation services, and causes the forum-related conduct from which Plaintiff's claims arise. Plaintiff relies on Defendant's own campaign conduct, including conduct undertaken by publishers acting at its direction or within the scope of their authority, rather than the mere accessibility of a website.

28. Purposeful direction. Defendant deliberately seeks California consumers as a source of traffic, leads, and revenue. On information and belief, it acquires or causes publishers to use recipient lists containing California residents and authorizes distribution of the challenged payment, shipment, and approval campaigns to those recipients. California is an intended market for the acquisition operation, not a place where an otherwise unrelated publication happened to be encountered.

29. The asserted contacts include the actual transmissions to Plaintiff's California-used personal address, repeated use of his name, and links designed to move an identified recipient into the promoted commercial funnel. On information and belief, Defendant's lead and campaign records associate recipients and responses with consumer profiles and geographic information used to select, value, and attribute leads. That allegation concerns Defendant's commercial use of recipient information; it does not assume that an icloud.com domain by itself reveals California residency.

30. On information and belief, Defendant and the publishers acting for these campaigns knew that the campaigns included California recipients and deliberately continued serving that audience. The inference rests on the alleged sustained distribution to California consumers, the commercial value of identifying and qualifying leads, and the personalized campaign architecture. The specific geographic fields, list-source instructions, and recipient-selection criteria are maintained by Defendant and its campaign participants.

31. Plaintiff alleges intentional commercial acts: preparing or approving the advertised funnel, procuring its promotion, and causing or authorizing personalized solicitation of the intended consumer audience. The claimed wrong is the materially

deceptive method of obtaining traffic. Defendant's use of a publisher or an out-of-state server does not make those choices the unilateral acts of Plaintiff.

32. California connection. Defendant's campaign reaches a California resident at the personal address he uses here, seeks to induce his commercial engagement here, and imposes the alleged unwanted solicitation here. The California nexus therefore includes Defendant's chosen solicitation and exploitation of a forum market. Plaintiff's domicile alone, without those suit-related acts, is not the asserted basis for jurisdiction.

33. In *Briskin v. Shopify, Inc.*, the en banc Ninth Circuit rejected the proposition that a business must target California more intensively than other states before its deliberately directed electronic conduct can support specific jurisdiction. Defendant's nationwide distribution does not negate the California contacts alleged here. Plaintiff relies on Defendant's affirmative exploitation of the California consumer audience and the challenged transmissions into that audience.[2]

34. Relatedness. Plaintiff's section 17529.5 claim arises directly from the California-directed solicitations. The advertisements constituting the alleged statutory violations are the same advertisements establishing the forum connection. Their receipt and review in California are part of the events challenged, rather than collateral consequences of a transaction completed entirely elsewhere.

35. The proposed Class is confined to recipients at California electronic-mail addresses and to the identified campaign templates. The class claim likewise concerns Defendant's exploitation of the California recipient market. Plaintiff does not invoke California jurisdiction to recover for unrelated foreign campaigns having no California connection.

36. Reasonableness. California has a substantial interest in enforcing its rules against materially deceptive commercial e-mail sent to its residents. Plaintiff has a substantial interest in obtaining relief where he lives and received the messages. Defendant

[2] *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757–61 (9th Cir. 2025) (en banc) (rejecting a differential-targeting requirement and analyzing the defendant's own deliberate, forum-connected electronic conduct rather than treating nationwide reach as immunity from specific jurisdiction).

deliberately conducts an electronic consumer-acquisition business serving that market, and litigating the legality of those solicitations here is reasonably foreseeable.

37. The material evidence is predominantly electronic, including templates, transmission logs, destination records, publisher agreements, and purported consent records. Those materials can be produced without relocating an entire business. Any burden associated with Defendant's New Jersey location must be weighed against its intentional pursuit of California consumers and California's interest in the conduct at issue.

38. Accordingly, Defendant's forum-related choices, the direct relationship between those choices and the claim, and the interests of the parties and the forum make the exercise of specific jurisdiction consistent with fair play and substantial justice. Should Defendant contest the facts uniquely within its possession, Plaintiff requests appropriately focused jurisdictional discovery into these identified campaign and recipient-selection matters.

## VI. VENUE

39. Venue is proper under 28 U.S.C. § 1391(b)(2). Plaintiff resides in this District, received and reviewed the challenged solicitations here, and experienced the resulting interference with his personal inbox here. A substantial part of the events giving rise to the claim occurred in this District even if campaign servers, publishers, or Defendant's personnel were located elsewhere.

## VII. FACTUAL ALLEGATIONS

40. Section 17529.5(a)(3) prohibits advertising in a commercial e-mail sent from California or to a California electronic-mail address when the subject line is known to be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact concerning the message's contents or subject matter. Plaintiff challenges fabricated transaction and approval notices meeting that standard; he does not seek liability merely because an advertisement was unsolicited.

41. On information and belief, Defendant uses the challenged e-mails to acquire visitors and leads for a commercial consent-harvesting operation. A "consent farm," as

used here, is a lead-generation funnel that induces consumers to supply information or take an ostensibly ministerial action, then characterizes that interaction as broad permission for marketing by the operator or its partners. The distinction matters: a consumer seeking an actual payment is not necessarily shopping for marketing offers or volunteering to become a marketable lead.

42. The challenged mechanism has three connected stages. First, a personalized e-mail claims that something already belongs to the recipient or has already occurred in his favor. The words “PENDING,” “IN Michael’s FILE,” “Arrived,” “APPROVED,” and “Ready to Ship” replace an honest description of a commercial lead-generation advertisement with the appearance of an existing entitlement or account event. Second, the message directs the recipient toward a supposedly necessary next step, such as requesting the refund, collecting the payment, accepting the settlement, verifying the credit line, or securing the order. The invitation to perform that step is commercially valuable to Defendant because it delivers a recipient into its acquisition funnel. Nothing about the recipient’s desire to investigate an asserted payment establishes that he wished to solicit offers from unrelated marketers. Third, on information and belief, the funnel seeks consumer identifying and contact information and associates the resulting interaction with a campaign or publisher. Defendant monetizes acquired leads and purported marketing permissions through its lead-generation business. The alleged wrong is aggravated when a misleading transactional pretext is used to procure the very interaction later portrayed as voluntary participation in a marketing program.

43. The mechanism exploits an imbalance of information. The operator knows that it is acquiring a marketable lead; the consumer is told that a payment, shipment, or approval already exists. Urgency, personalization, and apparent account familiarity encourage action before the recipient understands that different parties and a different commercial purpose are involved. The FTC has identified deceptive lead-generation designs and obscured data-use disclosures as threats to consumer choice.[3]

[3] Fed. Trade Comm’n, _Bringing Dark Patterns to Light_ 17–18 (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-

44. The misconduct alleged here is deliberate exploitation of consumers' attention and expectations. It uses apparent financial good news and account familiarity to reach people who did not request a marketing relationship. A business that lacks an actual refund or order can truthfully advertise a chance to apply for an offer. Choosing instead to announce an existing transaction converts an ordinary advertisement into a deceptive demand on the recipient's attention.

45. Plaintiff never signed up to receive Defendant's advertising. He had no preexisting business relationship with Defendant and never gave it direct consent to send the challenged messages. He did not ask Defendant or the identified senders to locate a refund, hold an old payment, administer a settlement, approve a credit line, or ship the samples described in these solicitations. His receipt of messages using his name does not establish that he supplied the name to Defendant or authorized its use.

46. The FTC has pursued other lead generators for allegedly using supposed rewards, job opportunities, or requested services to procure broad marketing permissions and then sell consumer information. That history is relevant context for the commercial incentives alleged here. Plaintiff does not allege that Defendant was a party to those enforcement cases or that another company's settlement proves this case.[4]

47. On information and belief, Defendant's economic incentive is to maximize commercially attributable engagement and the volume of marketable leads or permissions. A transactional subject line can advance both ends by drawing attention from consumers who would otherwise ignore an accurately labeled marketing solicitation. The same incentive explains the messages' repeated personalization and emphasis on a benefit supposedly already associated with the recipient.

---

%20FINAL.pdf (describing deceptive lead generators' use of false affiliations and misleading collection purposes to obtain information for sale; explaining that privacy choices should be presented when consumers decide how their data will be used).

[4] Fed. Trade Comm'n, *California-Based Lead Generator Agrees to Settlement Banning It from Making or Assisting Others in Making Telemarketing Calls*, Including Robocalls (Jan. 2, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/01/california-based-lead-generator-agrees-settlement-banning-it-making-or-assisting-others-making (describing allegations that Response Tree's websites obscured disclosures, harvested information under the guise of requested services, and sold leads without informed consent). Response Tree is not alleged to be affiliated with Defendant, and the cited allegations are offered as industry context.

48. The deception is not made harmless by the possibility that some unrelated advertiser might offer a real product, loan application, or promotion at the end of the funnel. Plaintiff challenges the false statement that his particular refund, payment, settlement, order, or approval already existed. A genuine opportunity to apply for something does not substantiate an invented completed transaction.

49. Plaintiff specifically denies signing any contract with Defendant, opening an account with it, or enrolling in the advertised lead-generation program. He never authorized another person, publisher, lead broker, or marketing partner to enroll him, accept online terms for him, or surrender his procedural rights. An address or name appearing in a purchased list does not establish those acts.

50. Plaintiff never agreed to an arbitration provision, delegation clause, class-action waiver, representative-action waiver, or forum-selection clause with Defendant. He did not manifest assent to any such provision by signature, checkbox, affirmative acceptance of disclosed contractual terms, or authorization of an agent. These denials concern the existence of an agreement, independently of any contention about whether a formed agreement would be enforceable.

51. Plaintiff had no actual knowledge of supposed arbitration or class-waiver terms before the challenged solicitations. He was not presented with terms he accepted that identified Defendant as his contracting counterparty and stated that his conduct would bind him to arbitration or waive class rights. Merely receiving or reading an e-mail, or following a promotional instruction to examine a supposed existing benefit, does not supply missing contractual formation.

52. To the extent Defendant later produces a TrustedForm certificate, session replay, lead record, IP address, timestamp, checkbox entry, or other electronic artifact, Plaintiff denies that the mere existence of that artifact establishes his assent. A record must be authenticated and connected to his actual conduct, the actual screen and terms presented at the relevant time, and an action that objectively manifested agreement. A matching identifier alone cannot establish all of those facts.

53. Plaintiff does not allege that every electronic consent certificate is inherently false or that reliable electronic records can never prove a contract. He alleges that he made no agreement with Defendant and that a technical record cannot substitute for the notice and assent needed to create one. Nor can terms introduced after the challenged transmission retrospectively authorize a false subject line already sent.

54. Any contention that Plaintiff's interaction with a promotional message established consent to marketing presents a separate question from whether he agreed to arbitrate or waive a class proceeding. Permission for one purpose, even if proven, does not automatically establish agreement to unrelated terms. Plaintiff denies providing either permission here.

55. The allegation of fraudulent procurement is also distinct from the formation denial. Defendant's false transactional premise concerns why the consumer is being contacted and what the next step will accomplish. Plaintiff challenges that predicate deception. He does not rely solely on a generalized assertion that every contract induced by any misrepresentation automatically fails to exist.

56. The sender domains and display names make the deception appear to originate in employment, account administration, payment handling, or fulfillment. Their significance here is contextual: the subject lines and calls to action purport to address an existing benefit rather than openly request participation in Defendant's lead-generation service. This cause of action does not rest on domain opacity alone.

57. Defendant knew, or the participants designing the challenged campaigns knew, whether an actual refund, settlement distribution, shipment, or approval existed for the addressed consumer. On information and belief, the same templates were personalized with recipient names without a corresponding completed transaction. Knowledge is further supported by the repeated variation of the same invented-entitlement device across unrelated categories of benefits.

58. The false facts are pleaded with particularity: who received the messages, the visible sending identities and addresses, the dates, the exact documented subject lines, the

transaction represented, why it was false, and the promoted commercial objective. Knowledge and the internal allocation of campaign responsibility are alleged on information and belief because Defendant and its vendors control those records.

59. Plaintiff personally experienced the repeated intrusion into his private inbox and spent attention reviewing messages framed as financial and shipment matters concerning him. He does not need to allege that he completed a purchase, furnished additional data, or actually received downstream robocalls to challenge the deceptive commercial e-mails he received. The alleged downstream business model explains the solicitation; it is not a substitute for his own injury.

60. CAN-SPAM does not displace the pleaded theory merely because the advertisements traveled by e-mail. Plaintiff seeks relief for material falsity and deception of the kind expressly preserved by 15 U.S.C. § 7707(b)(1).

## VIII. CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of himself and the proposed California E-mail Class defined below.

62. California E-mail Class: All natural persons who, during the applicable limitations period through the date of class certification, received at a California electronic-mail address a commercial e-mail advertisement in which Defendant advertised its lead-generation operation and that used one of the following subject lines, allowing for substitution of the recipient's name and immaterial punctuation or capitalization: "(OLD) Refund PENDING for [name]"; "IN [name]'s FILE: OLD 2025 PAYMENT"; "[name]'s Settlement Payment Arrived?"; "[name], YOU'VE BEEN APPROVED*"; "APPROVED CREDIT LINE | Five Thousand Dollar"; or "Your Order is Ready to Ship!"

63. Numerosity. On information and belief, the Class includes more than 100,000 persons and is sufficiently numerous that joinder is impracticable. The challenged messages are standardized, personalized mass advertisements rather than individual correspondence. The precise number and identities are ascertainable from the campaign,

suppression, publisher, transmission, and recipient records held by Defendant and its service providers.

- Commonality. Common questions include whether Defendant advertised in and commercially benefited from the challenged campaigns; which templates and subject lines were authorized or used; what the templates represented about pending refunds, payments, settlements, approvals, and shipments; and whether recipients actually had the represented preexisting transactions.
- Other common questions include whether the subject lines were likely to mislead reasonable recipients about material facts; what Defendant knew concerning the campaign representations; whether any direct-consent records are authentic and sufficient; and whether standardized funnel or website terms created an enforceable agreement or class waiver.
- Additional common questions concern Defendant's relationship with its publishers, control over campaign content and destinations, recordkeeping, compliance practices, the proper identification of statutory incidents, any claimed due-care reduction, and the measure of authorized relief.
- Predominance. The central questions turn on common campaign templates, offer substantiation, transmission and attribution records, and Defendant's standardized practices. Variations in a recipient's name or the time of transmission do not alter the central representation. Plaintiff does not ask the Court to infer liability from a wholly different campaign that merely shares Defendant's name.

64. Typicality. Plaintiff received the six identified subject-line variants identified in the Class definition. His claim arises from the same alleged commercial practice, statutory duty, and materially misleading representations challenged for the Class. Differences in the number of advertisements received or the resulting damages do not change that common course of conduct.

65. Adequacy. Plaintiff will fairly and adequately protect the Class, has no interests antagonistic to absent members, and has retained Pacific Trial Attorneys,

experienced counsel in consumer and digital-privacy litigation. Plaintiff denies entering an arbitration agreement or class waiver with Defendant and will contest any attempt to impose one without proof of formation.

66. Superiority. Individual litigation would require recipients to obtain campaign, publisher, and consent records controlled by a commercial enterprise to recover comparatively modest statutory amounts. A single proceeding permits consistent adjudication of the standardized deception and defenses. Class treatment can use campaign-specific subclasses or other case-management measures if differences among the documented subject lines require them.

67. Excluded from the Class are Defendant and entities it controls; its officers and directors; the assigned judicial officer and that officer's immediate family and staff; and Class Counsel and their employees. Class membership is determined by receipt of the objectively identified campaign messages at a California electronic-mail address, rather than by a recipient's subjective decision to sue.

68. Class membership and the number of challenged transmissions can be evaluated through recipient-address records, copies of messages, campaign identifiers, publisher transmission reports, and records identifying California users. Common proof can also determine the templates used, advertised destinations, substantiation for the asserted transactions, and standardized consent procedures.

69. If necessary, Plaintiff seeks campaign-specific subclasses corresponding to the six subject-line variants, with common questions concerning each template resolved together. The Class definition does not require an adjudication of ultimate liability before a recipient can be identified. The Court may refine the definition to conform to the evidence.

## IX. <u>CAUSE OF ACTION</u>

Violation of California Business and Professions Code § 17529.5(a)(3)

70. Plaintiff incorporates the preceding allegations as though fully set forth here. This cause of action seeks recovery for the documented, materially misleading subject-line campaigns identified above.

71. Defendant advertised in the challenged messages by using them to promote and obtain traffic and leads for its commercial acquisition operation. On information and belief, it initiated, authorized, procured, or caused distribution through publishers or marketing agents, selected or approved the promoted destinations, and derived commercial value from the resulting traffic or leads. Its liability is alleged as an advertiser participating in the solicitation, not simply as an entity whose name appeared somewhere on the internet.

72. The messages were commercial e-mail advertisements within Business and Professions Code section 17529.1(c). Their primary commercial purpose was to promote Defendant's lead-generation and marketing services and the offers, credit opportunities, or other commercial dispositions presented through the funnel. They were not truthful notices servicing an existing transaction between Plaintiff and Defendant.

73. The six identified subject lines violated section 17529.5(a)(3) because they were known to be likely to mislead a reasonable recipient about material facts concerning the contents or subject matter of the messages:

- "(OLD) Refund PENDING for Michael" represented a refund already pending for Plaintiff; no such refund existed.
- "IN Michael's FILE: OLD 2025 PAYMENT," preceded by a folder symbol in the reproduced message, represented an existing file and identifiable old payment associated with Plaintiff; Defendant was instead soliciting traffic for a commercial funnel.
- "Your Order is Ready to Ship!" represented an order already placed and ready for fulfillment; Plaintiff had placed no such order.
- "Michael Villagomez's Settlement Payment Arrived?" suggested a settlement payment associated with Plaintiff and ready for acceptance; the body reinforced that

supposed reservation, although Defendant was not administering the represented payment for him.

- "Michael, YOU'VE BEEN APPROVED*" represented a completed approval, which the body specified as a credit-line opportunity of up to $5,000. Defendant had no actual credit approval for Plaintiff of the kind represented. A qualification asterisk did not truthfully convert an invented approval into an existing one; and

74. "APPROVED CREDIT LINE | Five Thousand Dollar," represented a credit line already approved for Plaintiff. The body reinforced that completed-approval premise. No such approval existed; the promoted destination was the commercial credit-offer funnel identified above.

75. These representations were material because the existence of a payment, order, or approval is the reason offered for opening and acting on the message. The asserted factual predicates were absent. Conditional language elsewhere in the advertisements did not disclose that the supposedly existing transaction was invented. Plaintiff pleads material falsity when each message is considered in its entirety as well as in its subject line.

76. Defendant knew the representations would likely mislead reasonable recipients because, on information and belief, its acquisition campaigns used completed-transaction language without an actual consumer transaction to substantiate it. Its commercial objective was to induce entry into a marketing funnel through that false premise. The six identified subject-line variants were not accidental typographical errors or isolated transmission failures.

77. Plaintiff and Class members received unsolicited commercial advertisements within the statute's private-remedy provisions. Plaintiff had not supplied direct consent to these solicitations or entered a preexisting business relationship that authorized them. Any claimed consent defense must be assessed against the actual recipient, sender, scope, and evidence of authorization, not presumed from a message's assertion that the recipient is a registered member.

78. On information and belief, Defendant did not establish and implement with due care practices and procedures reasonably designed to prevent the challenged unlawful advertisements. The recurring use of invented transaction notices across separate campaign themes supports that allegation. A generic prohibition on spam in a publisher contract, standing alone, would not establish that Defendant actually implemented effective preventive procedures with due care.

79. Plaintiff's claim does not depend on proof that he purchased an advertised product or surrendered additional information after opening the messages. It challenges Defendant's advertising in materially misleading subject-line campaigns sent to his California electronic-mail address, with the actual unwanted contact and interference alleged above.

80. Plaintiff and Class members are entitled to the relief authorized by section 17529.5(b), including liquidated damages of $1,000 for each proven unlawful unsolicited commercial e-mail, subject to the applicable per-incident limits and other statutory requirements, together with reasonable attorneys' fees and costs. Plaintiff does not request duplicative recovery for the same message.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

a. An order certifying the California E-mail Class under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing Pacific Trial Attorneys as Class Counsel;

b. Liquidated damages under California Business and Professions Code section 17529.5(b)(1)(A)(ii) for Plaintiff and each Class member for each proven unlawful unsolicited commercial e-mail, subject to applicable statutory limits;

c. Appropriate injunctive relief against continued use of the challenged materially misleading subject lines, to the extent authorized by law and supported by the standing established in this action;

d. Reasonable attorneys' fees and costs under California Business and Professions Code section 17529.5(b)(1)(C);

e. Prejudgment and postjudgment interest to the extent allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Dated: November 2, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff